

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-12-2004

# In Re: Genesis

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-2313

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"In Re: Genesis " (2004). *2004 Decisions.* Paper 241.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/241

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

## UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

No. 03-2313

IN RE:
GENESIS HEALTH VENTURES, INC.,
Debtor

R. STEVEN SCHERFEL

v.

GENESIS HEALTH VENTURES, INC.

JOSEPH MCMAHON,
Trustee

R. Steven Scherfel,
Appellant

Appeal from the United States District Court
for the District of Delaware
(D.C. Civil No. 02-cv-00170)
District Judge:  Honorable Joseph J. Farnan, Jr.

Argued April 13, 2004

Before:  RENDELL, COWEN and LAY*, Circuit Judges.

(Filed: October 12, 2004)

---

\* Honorable Donald P. Lay, Senior Judge of the United States Court of Appeals for the
Eighth Circuit, sitting by designation.

Philip R. Michael  [ARGUED]
Goodkind, Labaton, Rudoff & Sucharow
100 Park Avenue, 12th Floor
New York, NY  10017
   *Counsel for Appellant*

Kathleen McDermott [ARGUED]
Blank Rome
600 New Hampshire Avenue, N.W.
Suite 1100
Washington, DC   20037
   *Counsel for Appellee*

---

OPINION OF THE COURT

---

RENDELL, <u>Circuit Judge</u>.

On appeal, plaintiff R. Steven Scherfel asks that we find that West End Family Pharmacy ("West End"), a New Jersey pharmacy which supplies drugs to Medicaid beneficiaries, violated the False Claims Act ("FCA"), 31 U.S.C. § 3729, *et seq.*, by failing to credit Medicaid for returned, unused medication and submitting successive claims to Medicaid for the repackaging and subsequent sale of such medication.  Scherfel argues that the government was charged for "worthless services" and was the recipient of false express certifications all in violation of the FCA.  He also urges that there are genuine issues of material fact regarding the commission of these alleged violations in several jurisdictions outside New Jersey.

Only recently, we confronted a nearly identical challenge under the False Claims Act, and, as memorialized in Judge Roth's thoughtful and comprehensive opinion, *see*

2

*United States ex rel. Quinn v. Omnicare, Inc.*, No. 03-2187, 2004 U.S. App. LEXIS

18474, at *1 (3d Cir. Sept. 1, 2004), concluded there was no liability for a New Jersey

pharmacy engaging in the practices alleged. We find *Omnicare* to be controlling.[1]

Here, the Bankruptcy Court considering Scherfel's claims determined he failed to

raise a genuine issue of material fact and granted summary judgment to debtors Genesis

Health Ventures, Inc. ("Genesis") and NeighborCare Pharmacy Services, Inc.

("NeighborCare"),[2] estimating Scherfel's proof of claim stemming from his False Claims

Act *qui tam* lawsuit at zero. The District Court affirmed the Bankruptcy Court's order

and adopted its opinion.[3] For the reasons set forth below, we will affirm.

---

[1]Despite Appellant's strident, but somewhat convoluted, efforts to distinguish the instant case from *Omnicare*, that decision squarely addresses his contentions on appeal. We recognize that the court in *Omnicare* discussed theories of liability under the FCA presented in a slightly different manner than those advanced by Scherfel; however, Appellant's legal theories, albeit creatively framed, comprise the exact same behavior and practices complained of by plaintiff in *Omnicare*.

[2]The pharmacy at issue in this action, West End, was owned by Vitalink Pharmacy Services, Inc. ("Vitalink") until 1998, at which time Genesis subsidiary NeighborCare acquired West End through a merger involving Genesis and Vitalink.

[3]The Bankruptcy Court for the District of Delaware had jurisdiction pursuant to 28 U.S.C. § 157(b). The District Court for the District of Delaware had jurisdiction to hear the appeal of the Bankruptcy Court's order pursuant to 28 U.S.C. § 158(a). We have jurisdiction over the District Court's order pursuant to 28 U.S.C. § 158(d).

Because the District Court sat as an appellate court, our review is plenary and we apply the same standards it applied. *Stonington Partners, Inc. v. Lernout & Hauspie Speech Prod. N.V.*, 310 F.3d 118, 121 (3d Cir. 2002). Thus, we review the Bankruptcy Court's legal determinations *de novo*, its factual findings for clear error, and its exercises of discretion for abuse of discretion. *Id.* at 121-22.

## I.

Medicaid is a federal program designed to provide health care services to qualifying low income individuals not subject to any other coverage. 42 U.S.C. § 1396, *et seq.* Though jointly financed and regulated by the federal and state governments, each state bears responsibility for administration of services. In New Jersey, the responsible agency is the Division of Medical Assistance and Health Services ("DMAHS").

In furtherance of this administration of services under Medicaid, a state agency like DMAHS enters into agreements with participating health care providers whereby providers submit claim forms to receive reimbursements. In New Jersey, DMAHS has set forth instructions for filing claims in a manual titled Pharmacy Services Fiscal Agent Billing Supplement ("FABS"); therein, pharmacies are directed to submit claims to Medicaid using the MC-6 claim form. The MC-6 claim form contains a "Provider Certification" requiring signature and which states in part: "I certify that . . . no part of the net amount payable under this claim has been paid . . . ."

Appellant Scherfel owns the Cherry Hill Convalescent Center ("CHCC"), a nursing home in Cherry Hill, New Jersey. Approximately seventy percent of the home's residents are covered by Medicaid, and from 1987 to December 31, 1996, CHCC contracted with West End, a Medicaid participant, to provide pharmacy services to CHCC's residents.

West End fulfilled its obligation by maintaining a fleet of "pharmaceutical carts" at

4

the nursing home itself. West End would stock the carts with whatever pharmaceuticals residents required – most came in small bottles or "bingo cards" – and the CHCC staff would then dispense the drugs. When restocking the carts, West End routinely collected any unused pharmaceuticals; according to Scherfel, in an average month, the pharmacy collected between 700 and 7000 unused pills initially sold to residents covered by Medicaid. Following collection, Scherfel alleges, it was West End's practice to repackage and resell the unused pills without crediting Medicaid for the sums already paid out to cover the cost of the pills, and to then submit "duplicative" claims to Medicaid for the subsequent resale of the pills to a new patient.

In support of his allegations, Scherfel offers only the following evidence: 1) a December 1996 statement by West End's Regional Vice President Sam Veltri (in response to an inquiry by Scherfel) indicating that West End "provides no credits to Medicaid" for unused medications, justified on the ground that "no one in the industry" provides such credits because the Medicaid reimbursement rates are "too low"; and 2) evidence of sporadic credit payments (or lack of payments) to several states other than New Jersey over a span of years, based upon which Scherfel argues that West End must have been evading its responsibilities since it paid out less than $400,000 over a seven year period and more than $2,000,000 during 2001, after his *qui tam* suit was filed.

Federal regulations contain no provisions requiring pharmaceutical providers to collect or account for unused drugs, regulating the handling of such drugs if collected, or

5

demanding credits be given to Medicaid for such drugs.[4]  However, state agencies charged with administering the Medicaid program have promulgated various regulations, some require that returned drugs be destroyed, while others demand destruction of only specific types of medication.  Some states direct pharmaceutical providers to credit the state Medicaid program for any returned and reusable drugs, while others do not.  Though New Jersey requires the destruction of certain types of drugs, *see* N.J.A.C. 13:39-9.15, it does not mandate that Medicaid be credited for the return of unused pharmaceuticals.[5]

## II.

Scherfel's essential claim is that the government was made to pay twice for the same medication – he argues that West End's "duplicative" claim forms not only contained express false certifications stating "no part of the net amount payable under this claim has been paid," but also that their submission constituted claims for "worthless services" in violation of the FCA.

---

[4]A 1985 memorandum from the Office of the Inspector General for the Department of Health and Human Services explained: "Medicaid regulations governing reimbursement for drugs are specified in 42 C.F.R. 447.331 through 447.334.  Those regulations, however, are silent regarding recovery by pharmacies for reusable drugs.  They do not require that reusable drugs be recovered by pharmacies nor appropriate credits be made to Medicaid if the drugs are recovered." (A146.)

[5]In a letter concerning another *qui tam* action dated December 14, 1998, DMAHS's Assistant Director of the Office of Health Service Administration stated, "DMAHS does not regulate the crediting or return of unused medications dispensed to nursing facility beneficiaries" and that he was "unaware of federal and State regulations requiring that any unused pharmaceuticals be properly credited to Medicaid." (A149.)

Regarding the latter contention, though Scherfel clearly urges that "worthless services" encompasses a broader spectrum of behavior than his false certification theory, the concept itself simply does not cover the alleged practice at issue. Case law in the area of "worthless services" under the FCA addresses instances in which either services literally are not provided or the service is so substandard as to be tantamount to no service at all. *See, e.g.*, *United States ex rel. Lee v. Smithkline Beecham, Inc.*, 245 F.3d 1048, 1053 (9th Cir. 2001) (construing complaint alleging submission of falsified medical test results for reimbursement to Medicaid as a theory based on "worthless services fraudulently provided to the government"). Moreover, as noted by the court in *United States ex rel. Mikes v. Strauss*, 274 F.3d 687, 702 (2d Cir. 2001), "An allegation that defendants violated the Act by submitting claims for worthless services is not predicated upon the false certification theory." Here, Scherfel's worthless services theory is indistinguishable from his alternatively advanced false certification theory – under both, he contends the government was duped into paying twice for the same drugs and that West End made misrepresentations in order to procure such payment.

Like the plaintiff in *Omnicare*, Scherfel argues that, when a returned medication is resold, West End is making a claim for an amount that has, at least in part, already been paid. 2004 U.S. App. LEXIS 18474, at *17. The MC-6 form requires West End to certify that "no part of the net amount payable under this claim has been paid," and Scherfel asserts that West End's agreement constitutes an expressly false certification

7

because the medication has been sold for a second time and West End in turn seeks to be paid a second time. But, in so arguing, Scherfel ignores the relevant legal scheme of state and federal law. In *Omnicare*, this contention was expressly addressed:

> [E]ven assuming that [defendant] is submitting successive claims for the same medications, there can be no FCA liability because New Jersey regulations entitle [defendant] to recycle and redispense returned medications. Section 13:39-9.15(a)(2) of the New Jersey Administrative Code, entitled "Disposal of unused medications," allows unused unit dose packaged medication, that "has been stored in a medication room or secure area in the institution . . . [with the] seal and control number . . . intact" to be "recycled and redispensed." The regulation does not, however, require pharmacies to credit Medicaid for the "recycled and redispensed" medications. Because [defendant] can legally recycle returned medications, the initial sale and the subsequent sale of a returned medication are properly viewed as separate transactions. As the District Court held, these transactions are "not duplicative in any sense that would make them inconsistent with the full-payment representation on the MC-6." Under this separate transaction theory, [defendant] does not make a false representation on the second claim form even though it does not state that Medicaid has already paid, at least in part, for a redispensed medication.
>
> In so concluding, we recognize that the second claim would be submitted to Medicaid for payment for the *same* medication. When [defendant] submits the second claim, it knows that the medication, which is the subject of that claim, was already dispensed once and returned. . . . However, because New Jersey regulations allow [defendant] to recycle returned medications and because no regulation requires . . . Medicaid pharmacies to credit Medicaid for the returns, we conclude that we cannot impose FCA liability based on the submission of the second claim.

*Id.* at *21-23 (record citation omitted). Therefore, even if Scherfel could adduce proof of *successive* billing, based on a separate transaction theory, such billing, *Omnicare*

8

holds, is not tantamount to *duplicative* billing violative of applicable law.[6]

Finally, Scherfel argues that genuine issues of material fact exist with respect to whether FCA violations were committed against the federal Medicaid programs operating in several states other than New Jersey. He bases his allegations on the statements made by Sam Veltri at the December 1996 meeting, and Vitalink's record of payment of credits in other jurisdictions. With respect to the former, Scherfel claims that when Veltri stated to Scherfel that no credits were being afforded to Medicaid for returned drugs, it should be inferred that Veltri was speaking about Vitalink's nationwide policy. With respect to the latter, Scherfel argues that from Vitalink and Genesis' crediting history – as evidenced by the discovery of payments to only two states over a seven year period – it should be inferred that Appellees failed to credit properly refunds to several other states.

But, as noted in *Omnicare*, "a False Claims Act plaintiff cannot 'merely . . . describe a private scheme in detail but then . . . allege simply and without any stated reason for his belief that claims requesting illegal payments must have been submitted, were likely submitted or should have been submitted to the Government.'" 2004 U.S. App. LEXIS 18474, at *19 (quoting *United States ex rel. Clausen v. Lab. Corp. of Am.*,

---

[6]In his supplemental letter brief, Scherfel seeks to distinguish *Omnicare* from *Genesis* based on the fact that defendants in *Omnicare* paid out 50% of the credits owed to Medicare, as opposed to the zero percent he alleges West End conceded in Sam Veltri's comment. However, this distinction is not viable under *Omnicare*. Even if NeighborCare and Genesis altogether failed to credit Medicaid for returned pharmaceuticals and even if those returned drugs were repackaged, resold, and rebilled to Medicaid, New Jersey regulations do not prohibit the practice.

290 F.3d 1301, 1311 (11th Cir. 2002)). Proof of the filing of such claims is required. *Id.* None of the evidence offered by Scherfel suffices to create a genuine issue of material fact as to whether the defendants did or did not issue required credits outside of New Jersey or, equally important, which states, if any, regulate claims in connection with the return and resale of unused drugs. Perhaps most significantly, Scherfel offers no evidence to show that drugs actually were returned and resold, and that Medicaid was not thereafter properly credited.

This lack of evidence as to the fact pattern, and specific instances in other jurisdictions, is symptomatic of the problem underlying Scherfel's allegations in general – they are just that, mere allegations. As was the case with the *qui tam* plaintiff in *Omnicare*, Scherfel has failed to adduce evidence of *any* actual filing of a false claim.

**III.**

In the absence of any statute or regulation requiring health care providers in New Jersey to credit Medicaid for returned drugs, we conclude that neither West End's failure to do so, nor its alleged practice of successive billing based on a separate transaction theory, gives rise to a False Claims Act violation. As for the jurisdictions that do require such credits, Scherfel has not provided any evidence that defendants failed to issue such credits as were required. Accordingly, we will AFFIRM the order of the District Court.