# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| THE STATE OF DELAWARE, | ) | |
| | ) | C.A. No. N17C-09-177 RRC |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PREMIER HEALTHCARE INC. | ) | |
| d/b/a NEWARK MANOR NURSING | ) | |
| HOME, BRUCE BOYER, | ) | |
| DAVID BOYER, and | ) | |
| SUSAN COMEGYS, | ) | |
| | ) | |
| Defendants. | ) | |

Submitted: May 30, 2018
Decided: June 14, 2018

On Defendants' Motion to Dismiss. **DENIED.**

# <u>**MEMORANDUM OPINION**</u>

Kate S. Keller and Laura N. Najemy, Esquire, Deputy Attorneys General, Department of Justice, Wilmington, Delaware, Attorney for Plaintiff.

Maria R. Granaudo Gesty, Esquire, Burns White LLC, Wilmington, Delaware, Attorney for Defendants.

COOCH, R.J.

1

# I. INTRODUCTION

The State of Delaware ("Plaintiff") filed a Delaware False Claims and Reporting Act ("DFCRA") action against Premier Healthcare Inc. d/b/a Newark Manor Nursing Home ("Newark Manor"), Bruce Boyer, David Boyer, and Susan Comegys (collectively "Defendants"). The complaint alleged that since 2011 Defendants have submitted or caused to be submitted fraudulent claims for Medicaid reimbursement for "non-existent, grossly deficient, and materially substandard and/or worthless nursing home services" provided to five residents of Newark Manor.[1]

The issue at this stage is whether Plaintiff has alleged sufficient facts in the complaint for a DFCRA claim, an unjust enrichment claim, and DFCRA liability as to the individually named Defendants to survive Defendant's motion to dismiss for failure to state a claim pursuant to Delaware Superior Court Civil Rule 12(b)(6).

This Court concludes that Defendants' motion fails to demonstrate how Plaintiff is not entitled to recovery under any reasonably conceivable set of circumstances since this Court must accept all well-pleaded factual allegations as true under the standard of Delaware Superior Court Civil Rule 12(b)(6). The Court thus denies Defendant's motion to dismiss, without prejudice with leave for Plaintiff to amend the complaint at a later time, if needed.

# II. FACTS AND PROCEDURAL HISTORY

Newark Manor is a Delaware licensed, long term care nursing facility. Bruce Boyer is the owner of Newark Manor. David Boyer and Susan Comegys were administrators at Newark Manor at various times.

In 2009, Newark Manor contracted with the Delaware Medicaid program through the Contract for Items or Services Delivered to Delaware Medical Assistance Program Eligibles in the Department of Health and Social Services ("DMAP"). The DMAP provides that when a healthcare service provider submits a claim for payment for items or services provided under the DMAP, the provider certifies that the items or services were in compliance with the DMAP rules, regulations, and policies.

---

[1] Compl. ¶ 2.

Pursuant to federal law, nursing facilities, such as Newark Manor, must provide services that "meet professional standards of quality" to participate in the Medicare and Medicaid programs.[2] This compliance is a prerequisite to participation to participation in the Medicaid program. Compliance is assessed through annual survey inspections.

Plaintiff asserts that, since at least 2011, Defendants "submitted or caused to be submitted claims for payment for non-existent, grossly deficient, and materially substandard and/or worthless nursing home services, provided to highly vulnerable, elderly and disabled residents at Newark Manor."[3] Plaintiff argues that Defendants were informed about the multiple failures of care at Newark Manor and were provided state survey reports. Defendants contend that Plaintiff required Defendants to submit plans to correct the deficiencies and return Newark Manor to substantial compliance.[4] Defendants state that Newark Manor in fact returned to its compliant standard and Plaintiff renewed Newark Manor's license as an nursing home in Delaware. However, Plaintiff now, according to Defendants, seeks to further penalize Defendants with sanctions under the DFCRA for every claim relating to five identical residents that was submitted before, during, and after the alleged violations.

Plaintiff filed a complaint on September 18, 2017 which alleged that Defendants are subject to not only the penalties related to their noncompliance with the DMAP, but are also subject to DFCRA liability and should not receive payment from Plaintiff for any service provided to five Newark Manor residents. Plaintiff has identified five residents whose alleged substandard care by Newark Manor warrants recoupment by the State of its Medicaid payments to Newark Manor.

### A.    Resident 1

Resident 1 was an 88 year old woman admitted on December 30, 2010 who suffers from cognitive decline and Alzheimer's Disease. The care provided to Resident 1 was inspected by Plaintiff on four occasions between 2011 and 2014. Plaintiff alleges that, on June 7, 2014, Resident 1 suffered severe burns when a Newark Manor staff member's coffee spilled on Resident 1's leg. Plaintiff contends that Defendants did not transport Resident 1 to the hospital, nor did they administer

---

[2] Compl. ¶ 27.
[3] *Id.* at ¶ 23.
[4] Def.s' Op. Br. in Support of its Mot. to Dismiss at 1-2.

first aid,[5] with the exception of removing her clothing. Plaintiff also noted deficiencies in 2011 and 2014, respectively, in the form of weight loss and verbal abuse.

### B.     Resident 2

Resident 2 was a 95 year old woman who was admitted to Newark Manor with dementia, agitation, balance problems, and decreased muscle coordination. After numerous fall risk assessments, Newark Manor identified Resident 2 as a fall risk. Plaintiff alleges that Resident 2 fell eight times between February 24, 2014 and June 22, 2014.[6] Plaintiff also alleges that "[d]espite the eight falls in the four month period in 2014, Newark Manor failed to ensure Resident 2's safety by implementing an effective fall prevention strategy."[7]

Resident 2 suffered an additional ten falls between July 8, 2014 and September 25, 2015.[8] Resident 2 was also found lying on her bed with a television on her body that had apparently fallen off of its mounted position on the wall.[9]

### C.     Resident 3

Resident 3 was an 88 year old woman who suffered from disorientation, weakness to her left side cause by a stroke, confusion, and a history of falls and agitation. Plaintiff states that Resident 3 fell twenty-two times between June 14, 2013 and September 9, 2014, three of which resulted in "serious injuries."[10] On June 26, 2013, Resident 3 suffered a fractured neck.[11] Plaintiff contends that after Resident 3's return from the hospital, Defendants failed to implement the correct care plan for Resident 3. Plaintiff contends that Defendants did, however, change Resident 3's care plan to ensure her safety from falls after Resident 3 fractured her vertebrae on September 9, 2014.

---

[5] Defendants contend that staff at Newark Manor "contact[ed] the physician for an order for a burn cream." *Id.* at 7.

[6] Pl.'s Answ. Br. at 8.

[7] *Id.*

[8] Compl. ¶ 71.

[9] *Id.* at ¶ 73. Defendants contend that Resident 2 stated the television "did not fall on her or injure her." Def.s' Op. Br. in Support of its Mot. to Dismiss at 8.

[10] Compl. ¶¶ 77-79.

[11] *Id.* at ¶ 79.

4

Plaintiff contends that Resident 3 also suffered a coffee burn less than two months after Resident 1's coffee burn. Plaintiff alleges that Newark Manor did not have a burn policy in place when both Residents were burned, but implemented one afterward "that did not meet Mayo Clinic standards."[12]

### D. Resident 4

Resident 4 was an 88 year old woman who suffered from low sodium levels and high potassium levels due Syndrome of Inappropriate Antidiuretic Hormone release. Resident 4's six-year residency at Newark Manor is the longest of the five Residents discussed herein. Plaintiff alleges that "Defendants failed to monitor Resident 4's fluid intake and failed to request sodium chloride tablets as needed for Resident 4's condition."[13]

Plaintiff also contends that Defendants failed to implement an appropriate fall prevention plan for Resident 4, as she fell fourteen times between November 23, 2012 and July 2, 2015. Plaintiff states that Resident 4 suffered a fractured rib and a right tibial fracture as a result of two of those falls. Plaintiff also asserts that Defendants failed to implement an effective dental plan or plan to restore Resident 4's continence.

### E. Resident 5

Resident 5 was an 88 year old man who was diagnosed with legal blindness and a had history of blood clots and strokes. Allegedly, Defendants did not provide Resident 5 with his anti-coagulant medication for over four months, during which time he suffered edemas.[14] During the state survey, on August 30, 2016, Defendants "admitted that there was no clinical reason for discontinuing Resident 5's medication [and] that the lack of anti-coagulant was an oversight and 'missed medication.'"[15] Defendants contend that, following this survey, they began to again give Resident 5 his medication.

Plaintiff alleged in its Complaint that "[t]he substandard, grossly negligent and practically worthless services provided by the Defendants to Residents 1 through

---

[12] Pl.'s Answ. Br. at 8; Compl. ¶ 83.

[13] Pl.'s Answ. Br. at 9.

[14] Compl. ¶¶ 106-08. Defendants argue that "[u]pon admission, the physician did not order anti-coagulants and the chart contained documentation that the physician did not want such medications." Def.s' Op. Br. in Support of its Mot. to Dismiss at 10.

[15] Compl. ¶ 109.

would have been material to the [Managed Care Organizations], and the State Medicaid Agency's decision to make these [claim] payments . . . ."[16] Plaintiff contends "Defendants were aware of the failure to provided care that met professional standards of quality when they submitted claims for payment."[17] Plaintiff claims that, despite being made aware of the significant deficiencies in their service, Defendants still knowingly submitted claims for $1,515,504.35, which was paid to them by Medicaid.

Defendants assert that the question of the applicability of the DFCRA or the parallel federal law, the False Claims Act ("FCA"), "to claims related to services by a medical provider such as a nursing home" is an issue of first impression in Delaware.[18] Defendants now bring the Motion to Dismiss pursuant to Superior Court Civil Rule 12(b)(6) for failure to state a claim for which relief can be granted.

### III. THE PARTIES' CONTENTIONS

#### A. Defendants' Contentions

Defendants argue in favor of dismissal on essentially four grounds. First, Defendants contend that Plaintiff cannot make a DFCRA claim under either the "worthless services" or false certification theories. Second, Defendants maintain that Plaintiff cannot make out a claim for unjust enrichment. Third, Defendants assert that Plaintiff fails to state a cause of action against the individually named Defendants, Bruce Boyer, David Boyer, and Susan Comegys. Fourth, and alternatively, Defendants argue that Plaintiff fails to make a fraud claim under the strict pleading standard of Superior Court Civil Rule 9(b).

First, Defendants claim that the Complaint should be dismissed because Plaintiff fails to allege a proper DFCRA claim under either the "worthless services" or false certification theories.[19]

Defendants contend that, for a DFCRA claim to be successful under the "worthless services" theory, "Plaintiff must show that 'performance of the services

---

[16] *Id.* at ¶ 115.

[17] Pl.'s Answ. Br. at 11.

[18] Def.s' Op. Br. in Support of its Mot. to Dismiss at 13-14. Defendants state in their Motion that 6 *Del. C.* § 1201(1), 1201(2), and 1201(3) are "identical" to the federal equivalent FCA in 31 U.S.C. § 3729(a)(1)(A), 3729(a)(1)(B), and 3729(a)(1)(C).

[19] Def.s' Op. Br. in Support of its Mot. to Dismiss at 15.

[was] so deficient that for all practical purposes it is the equivalent of no performance at all.'"[20] Defendants illustrate this argument by stating, "[i]t is not enough to offer evidence that the defendant provided services that are worth some amount less than the services paid for. That is, a 'diminished value' of services theory does not satisfy this standard. Services that are 'worth less' are not 'worthless.'"[21] As such, Defendants maintain that, although state surveys revealed certain deficiencies in the service provided to the five Residents, Plaintiff cannot reach the conclusion that "the entire bundle of services provided to each of the five Residents during their long residency was substandard, much less 'worthless.'"[22]

Defendants state that the purpose of the DFCRA is to punish and deter the submission of fraudulent claims for payment to the government. Defendants contend that the goal of the DFCRA is not to focus on "torts, medical negligence, regulation violation, contractual breaches or other violations."[23]

Defendants also argue that Plaintiff cannot make out a DFCRA claim under the false certification theory because Plaintiff fails to allege "materiality." Defendants contend that Plaintiff's argument that, because Defendants participated in DMAP, they certified that they complied with all regulations is incomplete because it fails to allege the materiality of Plaintiff's payment decision.[24] Defendants seem to make this argument on the basis that Plaintiff continued to make payments to Defendants with knowledge of the alleged noncompliance with DMAP.[25] Defendants claim that, because the State had knowledge of the deficiencies and still paid the claims, the DMAP requirements were not material.[26] Defendants reiterated this argument at oral argument asserting that this Court need not reach the "worthless services" portion of the DFCRA analysis because Plaintiff has failed to adequately plead materiality, which is an essential element of the claim.[27]

Second, Defendants assert that Plaintiff fails to set out a proper unjust enrichment claim because the DFCRA claim fails.[28] Defendants state, "[s]ince the

---

[20] *Id.* (quoting *U.S. ex rel. Absher v. Momence Meadows Nursing Ctr., Inc.*, 764 F.3d 699, 710 (7th Cir. 2014)).

[21] *Id.* (footnote omitted).

[22] Def.s' Op. Br. in Support of its Mot. to Dismiss at 21.

[23] *Id.* at 14-15.

[24] *Id.* at 22-24.

[25] *Id.* at 28.

[26] Def.s' Reply Br. at 15.

[27] *See also id.* at 14-15.

[28] *Id.* at 30-31.

[DFCRA] claims fail as a matter of law, Plaintiff's common law claim for unjust enrichment must also fail because the facility's retention of the benefits is not inequitable."[29]

Third, Defendants argue that Plaintiff has failed to sufficiently plead "any factual allegation that could establish a basis for false claims against individual Defendants" Bruce Boyer, David Boyer, and Susan Comegys.[30] Defendants contend that Plaintiff "cannot establish that any of these individuals had any reason to believe that an action they took constituted a 'false or fraudulent claim.'"[31]

Fourth, Defendants argue in the alternative for dismissal because, as they claim, Plaintiff fails to meet the strict pleading requirement of Superior Court Civil Rule 9(b). Defendants contend that Plaintiff "fails to state when the fraudulent misrepresentation occurred[,]" and that Plaintiff "does not articulate any factual basis to support the conclusion that there was a fraudulent intent behind the submission of requests for payment."[32]

### B.   Plaintiff's Contentions

Plaintiff responds to Defendants' four arguments in order and also makes a fifth argument. First, Plaintiff argues that it has made a DFCRA claim under the "worthless services" and false certification theories. Second, Plaintiff claims that the complaint makes an adequate showing of a claim for unjust enrichment. Third, Plaintiff contends that the complaint states a cause of action against the individually named Defendants, Bruce Boyer, David Boyer, and Susan Comegys. Fourth, Plaintiff states that it has pleaded its complaint with specificity in accordance with Superior Court Civil Rule 9(b). Fifth, Plaintiff argues that Defendants' arguments come under the guise of a Rule 12(b)(6) motion to dismiss for failure to state a claim when they are more appropriately brought under a motion for summary judgment.

First, Plaintiff argues that it has pled a sufficient DFCRA claim under the "worthless services" theory because it alleges facts that show the care provided to Residents 1-5 was so collectively deficient in nature that they were worthless for purposes of DFCRA.

---

[29] *Id.* at 31.
[30] *Id.*
[31] *Id.* at 31-32.
[32] *Id.* at 33.

8

Plaintiff argues that it has adequately pled materiality to support a DFCRA claim under the false certification theory because, under the reasonable person standard, "[i]t is more than reasonable to assume that repeated violations and failure of care to Residents 1-5 would have been material to [the] decision to pay, as alleged in the Complaint."[33]

Also, Plaintiff alleges that "Defendants' contention that Plaintiff ha[d] actual knowledge of the violations and, therefore, is barred from arguing that the violations were material to its payment is flawed."[34] Plaintiff contends that "there is no evidence at this stage to establish that Defendants' knew that [the Delaware Medicaid and Medical Assistance Program] knew of the repeated violations of care for Residents 1-5 when it paid the claims."[35]

Second, Plaintiff asserts that it has made out a claim for unjust enrichment because "due to Defendants' material misrepresentations and false statements, the government is 'impoverished' for having paid $1.5 million dollars in claims for worthless services."[36]

Third, Plaintiff argues that its complaint adequately alleges sufficient facts to make out individual claims against Bruce Boyer, David Boyer, and Susan Comegys. Plaintiff makes this argument by incorporating by reference the same DFCRA argument against Newark Manor above. Plaintiff claims that "as owner and administrator, Bruce Boyer, David Boyer and Susan Comegys were aware of the substandard care and knowingly submitted claims for payment to Residents 1-5."[37]

Fourth, Plaintiff alleges that it has met the adequate level of specificity commensurate with the specific pleading standard of Rule 9(b). Plaintiff contends that it has "more than satisfied its heightened pleading requirement when it attached the Delaware Medicaid Remittance Advice documents . . . revealing systematic payment to Medicaid to Newark Manor for Residents 1-5."[38] Plaintiff states that "[t]he Complaint clearly states the who, what, where, when and how establishing the Defendants' intent to defraud Medicaid . . . ."[39]

---

[33] Pl.'s Answ. Br. at 21.
[34] *Id.* at 24.
[35] *Id.*
[36] *Id.* at 26.
[37] *Id.* at 26-27.
[38] *Id.* at 28.
[39] *Id.* at 29.

Fifth, Plaintiff argues that, because "[t]hroughout their motion [to dismiss], Defendants make assumptions regarding facts that are currently in dispute[,]" they are making arguments that are better heard on a motion for summary judgment, not on a motion to dismiss.[40]

## IV. STANDARD OF REVIEW

Upon a motion to dismiss under Superior Court Rule 12(b)(6), the Court "(i) accepts all well-pleaded factual allegations as true, (ii) accepts even vague allegations as well-pleaded if they give the opposing party notice of the claim, (iii) draws all reasonable inferences in favor of the non-moving party, and (iv) only dismisses a case where the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances."[41] However, the Court will "ignore conclusory allegations that lack specific supporting factual allegations."[42]

## V. DISCUSSION

Plaintiff's claim will not be dismissed, certainly at least at this juncture, because Defendants have not made a showing that Plaintiff "would not be entitled to recover under any reasonably conceivable set of circumstances."[43] Pursuant to Superior Court Civil Rule 12(b)(6), this Court will accept all well-pleaded facts as true and draw all reasonable inferences in favor of Plaintiff. Under this standard, the Court finds that Plaintiff has alleged in its complaint at least a cognizable claim that would entitle to Plaintiff to recovery. "[I]n denying [a] motion to dismiss, the court is not deciding the issue of whether plaintiffs will ultimately prevail, but is deciding if plaintiffs are entitled to offer evidence to support their claims."[44]

Defendants have not met their burden of demonstrating that under no reasonably conceivable set of circumstances would Plaintiff be entitled to recovery. Dismissal is premature at this juncture without a fully developed factual record. The Court finds that review of a DFCRA claim pursuant to 6 *Del. C.* § 1201 is more aptly

---

[40] *Id.* at 30.
[41] *Turf Nation, Inc. v. UBU Sports, Inc.*, 2017 WL 4535970, at *5 (Del. Super. Ct. Oct. 11, 2017) (citing *Central Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, 227 A.3d 531, 536 (Del. 2011)).
[42] *Id.* (quoting *Ramunno v. Crawley*, 705 A.2d 1029, 1034 (Del. 1998)).
[43] *Id.* (citing *Central Mortg. Co.*, 227 A.3d at 536).
[44] *Estate of Chance v. First Corr. Med. Inc.*, 2006 WL 2711483, at *5 (D. Del. Sept. 21, 2006).

suited when there exists a more developed factual record. The line at which allegedly deficient services provided by a nursing home become so substandard that they are "worthless" has been said to be a "blurry" one.[45] Whether or not Defendants' "actions fell within [what two courts have termed] the 'grey area' beyond this 'blurry point' [i]s a fact issue, not proper for a motion to dismiss . . . ."[46] A DFCRA claim requires a fact-intensive analysis of the type of services provided and the quality of those services, among other things.[47]

> A. *Plaintiff Has Alleged Sufficient Facts for a DFCRA Claim to Survive Rule 12(b)(6) Dismissal.*

Plaintiff's complaint provides sufficient facts that, when taken as true, provide a basis for DFCRA recovery under 6 *Del. C.* § 1201. "Because the DFCRA mirrors the [federal False Claims Act ("FCA")] . . . this Court will look to authority interpreting and applying the FCA for guidance in addition to Delaware authority."[48]

---

[45] *U.S. v. NHC Health Care Corp.*, 163 F. Supp. 2d 1051, 1056 (W.D. Mo. 2001)

> At some very blurry point, a provider of care can cease to maintain this standard by failing to perform the minimum necessary care activities required to promote the patient's quality of life. When the provider reaches that point, and still presents claims for reimbursement to Medicare, the provider has simply committed fraud against the United States. Whether the Government has demonstrated that a factual dispute remains as to whether NHC crossed into this admittedly grey area, is the proper focus of this Order.

[46] *Andrew S. Feldman,* Worthless Services in False Claims Act and Health Care Fraud Prosecutions: Worthless Services: Is It A Worthless Theory?, http://feldmanpllc.com/worthless-services-in-false-claims-act-and-health-care-fraud-prosecutions/ (citing *United States v. Villaspring Health Care Ctr., Inc.*, 2011 WL 6337455, at *5 (E.D. Ky. Dec. 19, 2011).

[47] *Villaspring*, 2011 WL 6337455, at *5 (finding that whether the defendant nursing home's actions fell within the 'admittedly grey area' beyond this 'blurry point' is necessarily a fact-intensive inquiry and, therefore, not a proper question for the Court to answer on a motion to dismiss."). *But see* Richard Hughes IV, J.D., M.P.H., *With A Worthless Services Hammer, Everything Looks Like A Nail: Litigating Quality of Care Under the False Claims Act*, 37 J. Legal Med. 65, 82 (2017) (commenting that "[t]hough decided by a lower court, *Villaspring* represented a dangerous turning point, expanding the application of [*U.S. v. NHC Health Care Corp.*'s] failed reasoning by inviting courts to make an inappropriate inquiry of health care quality" and allowing "an even lower standard to establish a claim, holding that it was sufficient to show 'patients were not provided the quality of care which meets the statutory standard.'") (quoting *Villaspring*, 2011 WL 6337455, at *5.)

[48] *State Dep't of Labor- Div. of Unemployment Ins. v. Pasquale*, 2015 WL 5461540, at *3 (Del. Super. Ct. Sept. 17, 2015).

At this stage, the Court is satisfied with the facts alleged by Plaintiff to establish a claim under either the "worthless services" or false certification theories of DFCRA.

1.     Plaintiff has adequately alleged some degree of "worthless services."

As alleged, Plaintiff has set forth a viable DFCRA claim under the "worthless services" theory. When viewing the facts in the complaint in the light most favorable to Plaintiff, Defendants have not demonstrated that dismissal is warranted because Plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances.

For example, Plaintiff alleges that "Resident 1[49] suffered second degree burns over four inches in diameter on both of her inner thighs" when "a direct staff person put her own cup of very hot coffee on the table near Resident 1, who grabbed at the coffee and spilled it into her lap."[50] Plaintiff alleges that "[a]ny burn three inches or larger is considered a major burn and the standard of care dictates that the injured party should be taken to the Emergency Room[,]" which was not done in this case.[51] Instead, Plaintiff contends that Defendants' staff "failed to administer any first aid or treatment to Resident 1 for over five hours, and only did so after Resident 1's daughter demanded something be done."[52] Plaintiff maintains that Defendants failed to create a burn policy for another two months, and only after another Resident suffered similar coffee burns.[53]

The Court need not now reach the issue of which of the "worthless services" standards to apply. Defendants urge the Court to follow the United States Court of Appeals for the Third Circuit's approach in *In re Genesis Health Ventures, Inc.*, in which that court stated, "[c]ase law in the area of "worthless services" under the FCA addresses instances in which either services literally are not provided or the service is so substandard as to be tantamount to no service at all."[54]

---

[49] For purposes of this opinion, factual examples as to the sufficiency of Plaintiff's complaint will be contained to Resident 1 even though well-pleaded facts can be found as to services provided to Residents 2-5 as well.

[50] Compl. ¶ 13.

[51] *Id.* at ¶ 54.

[52] *Id.*

[53] *Id. at* ¶ 83. The burn policy allegedly failed to meet Mayo Clinic standards.

[54] 112 F. App'x 140, 143 (3d Cir. 2004) (citing *United States ex rel. Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1053 (9th Cir.2001)); *see also Absher*, 764 F.3d at 710 (quoting *Mikes v.*

12

Plaintiff, however, urges the Court to adopt the United States District Court for the District of Minnesota's approach in *United States ex rel. Scharber v. Golden Gate Nat'l Senior Care LLC*, 135 F. Supp. 3d 944, 964 (D. Minn. 2015). In *Scharber*, the court rejected the generally-accepted standard from *Absher*. The *Scharber* court found that "[a] service can be worthless because of its deficient nature even if the service was provided."[55]

While this Court need not now reach the issue of which of these two proffered standards for "worthless services" applies here, this Court will note that it is presently somewhat inclined ultimately, if needed, to adopt the standard used by the Third Circuit in *Genesis*. However, at this stage, the Court finds that Plaintiff has alleged sufficient facts for a DFCRA claims under either "worthless services" theory to survive Defendants' motion to dismiss for failure to state a claim.

2.  <u>Plaintiff has adequately alleged materiality to support the false certification theory.</u>

Plaintiff has presented sufficient facts of materiality to support a viable DFCRA claim under the false certification theory. 6 *Del. C.* § 1201(1) and § 1201(2) prohibits a person from "[k]nowingly present[ing], or caus[ing] to be presented a false or fraudulent claim for payment or approval" and "[k]nowingly mak[ing], us[ing] or caus[ing] to be made or used a false record or statement material to a false or fraudulent claim . . . ." The United States Supreme Court in *Universal Health Servs., Inc. v. United States ex rel. Escobar* held that "[w]hat matters is not the label the Government attaches to a requirement, but whether the defendant knowingly violated a requirement that the defendant knows is material to the Government's payment decision."[56] The United States Supreme Court also stated, "[a] misrepresentation about compliance with a statutory, regulatory, or contractual requirement must be material to the Government's payment decision in order to be actionable under the False Claims Act."[57]

---

*Straus*, 274 F.3d 687, 703 (2d Cir. 2001)) (holding that "the performance of the service must be so deficient that for all practical purposes it is the equivalent of no performance at all.") (internal brackets omitted).

[55] *Scharber*, 135 F. Supp. 3d at 964 (quoting *U.S. ex rel. Acad. Health Ctr., Inc. v. Hyperion Found., Inc.*, 2014 WL 3385189, at *43 (S.D. Miss. July 9, 2014)).

[56] 136 S. Ct. 1989, 1996 (2016).

[57] *Id.*

"'Material' means having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property."[58] "[A] misrepresentation is material if, had it not been made, the party complaining of fraud would not have taken the action alleged to have been induced by the misrepresentation"[59] The United States Supreme Court in *Escobar* made clear that the materiality analysis can be conducted from the perspective of a reasonable person or a particular defendant.[60] The Court held that a matter is material:

> (1) if a reasonable man would attach importance to it in determining his choice of action in the transaction; or (2) if the defendant knew or had reason to know that the recipient of the representation attaches importance to the specific matter in determining his choice of action, even though a reasonable person would not.[61]

Drawing all reasonable inferences in favor of Plaintiff, the Court finds that Plaintiff has sufficiently alleged facts as to materiality under the reasonable person standard. In the complaint, Plaintiff makes an adequate showing that the alleged "practically worthless services provided . . . would have a natural tendency to influence, or be capable of influencing the payment of money by the Medicaid Program."[62] It is conceivable that a reasonable person in Plaintiff's position would have considered not paying the claim in light of, for example, the severe burns suffered by Resident 1. As such, at this stage, the Court finds that Plaintiff has alleged sufficient facts as to materiality for a DFCRA claims under the false certification theory to survive Defendants' motion to dismiss for failure to state a claim.

### B.   *Plaintiff Has Alleged Sufficient Facts to Support Unjust Enrichment Claims.*

Plaintiff has adequately pled unjust enrichment claims to survive dismissal. To plead an unjust enrichment claim, a party must demonstrate (1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law.[63] In its complaint, Plaintiff has asserted facts that, if accepted as true, would form the

---

[58] *Id.* at 2002 (quoting 31 U.S.C. § 3729).

[59] *Id.* at n.5 (quoting 26 Williston on Contracts § 69:12, p. 550 (4th ed. 2003)).

[60] *Id.* at 2002-03.

[61] *Id.*

[62] Compl. ¶¶ 115-121.

[63] *Jackson Nat. Life. Ins. Co. v. Kennedy*, 741 A.2d 377, 394 (Del. Ch. 1999).

basis of an unjust enrichment claim. Defendants have not met the burden of demonstrating that under no reasonably conceivable set of circumstances would Plaintiff be entitled to recovery for a claim for unjust enrichment. As such, dismissal of this count is denied.

C.    *Plaintiff Has Alleged Sufficient Against Individual Defendants Bruce Boyer, David Boyer, and Susan Comegys.*

Plaintiff has pled facts that, when taken as true, set forth viable grounds for recovery against the individual Defendants, Bruce Boyer, David Boyer, and Susan Comegys. In the complaint, Plaintiff stated

> 46.    Bruce Boyer, as owner of Newark Manor, was aware that some residents' care was paid by the State Medicaid Agency.
> 47.    Bruce Boyer was also aware of the grossly inadequate, materially substandard and worthless services being provided at his facility because he received the state surveys, and because he reviewed all the incident reports.
> 48.    Comegys, as one of the administrators, reviewed and initialed all incident reports, and was therefore aware of the grossly inadequate, materially substandard and worthless services being provided at Newark Manor.
> 49.    David Boyer, as one of the administrators, reviewed and initialed all incident reports, and was therefore aware of the grossly inadequate, materially substandard and worthless services being provided at Newark Manor.[64]

The Court finds that, as pled, these facts comprise a conceivable DFCRA claim against the individually named Defendants. As such, dismissal of a DFCRA claim against the individual Defendants, Bruce Boyer, David Boyer, and Susan Comegys, is denied.

## VI. CONCLUSION

Dismissal at this time would be premature given the factually specific analysis required in a DFCRA claim. Defendants have not demonstrated that Plaintiff's claim cannot succeed under any reasonably conceivable set of circumstances. Therefore, the motion to dismiss is denied without prejudice and if needed, the Plaintiff may amend the complaint.

---

[64] Compl. ¶¶ 46-49.

15

Defendants' motion to dismiss is **DENIED.** The Court will promptly meet with counsel to develop a Trial Scheduling Order.

_____
Richard R. Cooch, J.


cc: Prothonotary